Harold J. Butcher, of Anchorage, for plaintiffs.

**ISON et ux. v. BAKER et al.**

**No. A–3870.**

District Court, Alaska.
Third Div. Anchorage.

July 22, 1946.

George B. Grigsby and Edward V. Davis of Davis & Renfrew, all of Anchorage, for defendant.

DIMOND, District Judge.

The plaintiffs, Oscar Ison and Agnes J. Ison, husband and wife, have brought this action against the defendants, Audrey Watkins Baker and Marie Cox, seeking to recover judgment for the total amount of $10,800, plus attorneys' fees and costs, on the ground of an overcharge in rent for a house located at 209½ Fifth Avenue in the City of Anchorage. The plaintiffs assert that the overcharge amounts to $1800. and that they have a right to recover three times that amount, to wit, $5400, because of

each of two distinct and separate violations of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., hereinafter referred to as the Act, and the lawful regulations made by the Price Administrator pursuant to the provisions of the Act. Summons in the action was served upon the defendant Cox but not upon the defendant Baker. The defendant Cox appeared and answered, and the cause proceeded to trial against her only.

During all of the time with which we are here concerned, the defendant Baker has been and is the owner of the premises in question, and since the latter part of the month of May 1944, the defendant Cox has been and is the agent and attorney in fact of the defendant Baker as concerns said premises, and, therefore, it is sought here to hold the defendant Cox responsible, under the Act and the regulations, for the overcharge of rent by reason of said defendant's capacity and acts as agent and attorney in fact for the defendant Baker.

It appears from the proof that the defendant Baker, on May 4, 1944, leased the premises to Vestal E. Webb for the term of one year at the rental of $350 per month, payable in advance on the 20th day of each and every month, except that the rentals for the first, second, ninth, tenth, eleventh and twelfth months were required to be paid in advance by the lessee Webb as follows: The sum of $600 on the date of execution and delivery of the lease; the sum of $450 on or before the 20th day of May 1944, the date on which the lessee was to enter into possession of the premises; and the balance of the advance rental payments, to wit, the sum of $1050, on or before June 20, 1944. While the proof on the point was none too clear, it indicates that Webb paid $1050 of such advance rentals to the defendant Baker and the remaining $1050 to the defendant Cox.

The plaintiffs arrived in Anchorage, Alaska, within a week prior to August 21, 1944. They found the housing situation in the city painfully acute, and were desperately seeking to find a place to live when they were told that the defendant Cox might be able to accommodate them in an apartment house, not involved in this case, which she herself owned. At that time the defendant Cox, being dissatisfied with the conduct of the leased premises by Webb, desired to have a new tenant, and advised the plaintiffs to consult with Webb. While the testimony as to what thereafter immediately transpired is conflicting as to who "managed" the business, on August 21, 1944, Webb assigned her lease of the premises to the plaintiffs in this action and the assignment was agreed to by the owner, the defendant Baker, through her attorney in fact, defendant Cox, in an instrument of which the following is a copy:

"Lessor's Agreement to Assignment of Lease

"United States of America⎱
"Territory of Alaska    ⎰ss:

"This is to certify that I, Marie Cox, the legally appointed and authorized attorney in fact for Audrey Watkins Baker, do hereby unconditionally consent to the transfer and assignment of that certain lease described in the foregoing instrument.

"In witness whereof I have hereunto set my hand and seal this 21st day of August, 1944.

"Audrey Watkins Baker
"By /s/ Marie Cox
"Her Attorney in Fact

"Subscribed and sworn to before me this 21st day of August, 1944.
"/s/ Edward L. Arnell
"Notary Public in and for Alaska.
"My commission expires: 6–21–47."

The undisputed testimony shows that upon receiving the assignment of the lease the plaintiffs paid to Webb the total sum of $1400, refund to Webb of rental covering the last four months of the term of the lease, namely, the period between January 20, 1945, and May 20, 1945, which Webb had paid to the defendant Baker or Cox. Thereafter the plaintiffs paid to the defendant Cox the total sum of $1750 to cover the rental prescribed in the lease for the remaining period of the lease between August 20, 1944, and January 20, 1945.

While the date of construction of the building does not clearly appear from the evidence, it is agreed that Webb was the

first tenant. Hence no question arises herein as to any "freeze" of any pre-existing rentals.

No registration of the premises by the defendants, or either of them, was filed with the local Office of Price Administration until the month of September, 1944, although the then current regulations required that such registration be made within 30 days after the premises were leased. The defendants Cox and Baker were clearly in default in failing to make such registration within the time prescribed by the applicable regulations. The requirements for such registration, and the penalty for failing to register, are embraced in Section 4(e) of the regulations quoted below:

"First rent after effective date. For (1) newly constructed housing accommodations without priority rating first rented on or after the effective date of regulation, or (2) housing accommodations changed on or after such effective date so as to result in an increase or decrease of the number of dwelling units in such housing accommodations, or (3) housing accommodations not rented at any time during the two months ending on the maximum rent date nor between that date and the effective date, the first rent for such accommodations after the change or the effective date, as the case may be, but in no event more than the maximum rent provided for such accommodations by any order of the Administrator issued prior to September 22, 1942. Within 30 days after so renting the landlord shall register the accommodations as provided in section 7. The Administrator may order a decrease in the maximum rent as provided in section 5 (c).

"If the landlord fails to file a registration statement within the time specified, the rent received for any rental period commencing on or after the date of the first renting or October 1, 1943 or the effective date of regulation, whichever is the later, shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5 (c) (1). In such case, the order under section 5 (c) (1) shall be effective to decrease the maximum rent from the date of such first renting or from the beginning of the first rental period on or after October 1, 1943 or the effective date of regulation, whichever is the later. The foregoing provisions and any refund thereunder do not affect any civil or criminal liability provided by the act for failure to file the registration statement required by section 7."

On January 10, 1945, the local Office of Price Administration instituted proceedings for the reduction of the rent for the premises, but those proceedings were, by mistake, brought under provisions of the regulations not applicable thereto and, therefore, such proceedings were terminated by the Office of Price Administration on February 17, 1945. On the same date the Rent Director of the Office of Price Administration for Alaska notified the defendant Cox that a preliminary investigation had indicated that the maximum rent for the premises should be decreased and that the director proposed to decrease the maximum rent from $350 per month to $150 per month. Neither the defendant Cox nor the defendant Baker filed objections to the proposed reduction of rent and under date of March 30, 1945 the director made an order reducing the rent for the premises from $350 per month to $150 per month, to be effective beginning May 20, 1944 and requiring refund to the tenant of the overcharge thus established of $200 per month for the entire period of the lease. The order and the accompanying letter, dated April 5, 1945, addressed to the defendant Cox by L. F. Roberts, rent representative of the Office of Price Administration of Anchorage, Alaska, are set out below:

"Office of Price Administration

"Anchorage, Alaska,
"April 5, 1945.

"Mrs. Marie Cox,
"Box 324,
"Anchorage, Alaska.
"Dear Mrs. Cox,
"Enclosed please find copy of order decreasing rent on the Baker Rooms, 209½ Fifth Avenue, from $350.00 to $150.00 a month.

"This order is retroactive to May 20, 1944 as explained in Mr. McCarron's letter

from Juneau. It will be necessary that a refund to the tenant for the difference between the rent set by the Rent Director and the original rent charged be made within 30 days. I am also enclosing a refund form to be signed by the tenants.

"Yours very truly,
"/signed/ L. F. Roberts
"Rent Representative
"Enclosures—Form D-38 'Order Decreasing Maximum Rent'
"LL's copy of form DD 6-D
"Refund Form—$1800.00—Mrs. Oscar Ison
"Refund Form—$600.00—Vista Webb"

It is to be noted that at the time the order above quoted was made, the rentals prescribed by the lease for the entire year had been paid.

Neither the defendant Cox nor the defendant Baker protested the order or appealed therefrom, and they entirely ignored the requirement that the overcharge of $200 per month be refunded to the tenant.

A vitally important part of the proof will now be referred to. It appears beyond question that the building on the premises was constructed and has always been used as a rooming house. The house

"OPA
"Form D-38

"United States of America          Alaska Defense Rental Area
"Office of Price Administration    Room 3, Valentine Building
                                   Juneau, Alaska

Order Decreasing Maximum Rent

| "Concerning (Description of Accommodations) | Docket No. |
|---|---|
| "Baker Rooms, 209½ Fifth Avenue, Anchorage, Alaska | 9–Aa–3–191 |

"To (Name and Address of Landlord):
  "Mrs. Marie Cox
  "209½ Fifth Avenue
  "Anchorage, Alaska

  "Due notice having been given the landlord of the above-described accommodations, the Rent Director has considered the evidence in this matter and finds that the landlord failed to register the housing accommodations within 30 days after the date of first renting the same as provided in Section 7, and that the facts in this case require a reduction of the maximum rent on the grounds stated in Section 5(c) (1) of the Rent Regulation.

  "Therefore, on the basis of the rent which the Rent Director finds was generally prevailing in this Defense-Rental Area for comparable housing accommodations on the Maximum Rent Date, it is ordered that the maximum rent for the above-described accommodations be, and it hereby is, changed from $350.00 per month to $150.00 per month.

  "Issued March 30, 1945, and effective beginning May 20, 1944. The landlord is required to refund within 30 days, pursuant to the provisions of Section 4(e) of the Rent Regulation, the amount of money received from May 20, 1944 to the date of this order in excess of the maximum rent which is fixed by this order. This order will remain in effect until changed by the Office of Price Administration.

"/s/ E. P. McCarron
"Rent Director

"Copy to (Name and Address of Tenant):
  "Mr. Oscar Ison
  "209½ Fifth Avenue
  "Anchorage, Alaska"

contains 11 rooms, each suitable for occupancy by one or more persons. Webb used the property as a rooming house and a boarding house. The plaintiffs used it for the same purposes and also as their own residence. Although the plaintiffs actually lived in the house after they took it over in August, 1944, and until the expiration of the term of the lease, it appears that only a comparatively small part of the house was used for plaintiffs' residence, and the remainder was occupied by roomers, who paid to the plaintiffs varying rentals for the several rooms. In the first instance, also, Webb had conducted a boarding house on the premises and furnished meals to some of the guests, and this was continued by the plaintiffs for a considerable length of time after they took over the premises. At all times after the plaintiffs' occupancy of the premises and before, more than 75% of the space rented, and perhaps as much as 90% thereof, was clearly used for business purposes and not as a private residence.

■ At the conclusion of all of the testimony the defendant Cox, through her counsel, made a motion for an instructed verdict upon several grounds, the principal one being that the plaintiffs were not authorized to bring and maintain the action under the provisions of Section 205(e) of the Act, because the plaintiffs had rented the premises for use in the course of trade or business, and that any action which, under the circumstances, might have been authorized by law, should have been brought by the Price Administrator and by no other person. Section 205(e) of the Act, as well as Section 4(a), which must be read and construed in connection with Section 205(e), are as follows:

205(e) "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither willfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered."

4(a) "It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or

business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

The question thus presented is one of grave consequence not only in the instant case, but in all others of similar nature. As above indicated, the provisions of Section 205(e) itself state that, for the purposes of that section, the payment or receipt of rent for defense area housing accommodations shall be deemed the buying or selling of a commodity. Therefore, the plaintiffs in this action, in their payment of rent for the premises, bought a commodity, and in the buying of it, although neither they nor the defendant Cox knew it at the time of paying the purchase price of the commodity—the rentals for the premises—they paid, and were obliged to pay, what was later determined by the Office of Price Administration to be an overcharge amounting to $200 per month. That overcharge, then, as applied only to the rentals which were paid by the plaintiffs to the defendant Cox for the period of five months between August 20, 1944, and January 20, 1945, amounted in all to $1000; and if there be included in the overcharge to the plaintiffs the advance rentals which were paid by Webb to one of the defendants and then repaid by the plaintiffs to Webb, namely, the rentals for the period between January 20, 1945, and May 20, 1945, amount of the overcharge would total $1800. It is certain that, so far as the defendant Cox is concerned, the overcharge amounted to at least $1000. The disposition being made of the case does not require any further determination on that point.

The question now is, did the plaintiffs buy that commodity, namely, the housing accommodations furnished by the building at 209½ Fifth Avenue in the City of Anchorage, "for use or consumption other than in the course of trade or business?" If the plaintiffs bought the commodity and paid the overcharge "for use or consumption other than in the course of trade or business" then they are eligible to maintain this action and, once having brought the action, the Administrator is barred from bringing any similar action on the same ground. But if the plaintiffs bought the commodity for use or consumption in the course of trade or business, then they were never authorized to bring this action under the Act, for it is admitted that nowhere in the Act save in Section 205(e), or in other law, is there authority given to a private person to bring and maintain an action and recover judgment for any such overcharge, or for any damages connected with the making of such overcharge.

◼ Counsel for the plaintiffs vigorously insists that the plaintiffs cannot be held to have bought the commodity for use or consumption in the course of trade or business because they desired only living quarters for themselves, and they were obliged to purchase an assignment of the lease which Webb had on the premises in order to provide themselves with such living quarters; that the carrying on of trade or business on the premises was really forced upon them and, therefore, they did not rent the premises—buy the commodity—for use or consumption in the course of trade or business. It appears without dispute that at the time of the purchase the plaintiffs knew precisely what they were buying and what they would do with the premises when they had acquired the lease by assignment. At the time of the purchase and before, the plaintiffs contemplated the operation of a rooming house, and temporarily at least a boarding house, on the premises and the renting of many of the rooms, most of them in fact, to tenants at reasonable and adequate rentals. When the plaintiffs took over the premises they went into the business of running a rooming and boarding house thereon and they intended to do so upon acquiring the lease. Therefore, I find that the plaintiffs in this case bought the commodity for which an overcharge was made for use or consumption in the course of trade or business. It is impossible to avoid the conclusion that the purchase was made for use in the course of trade and business, and it is equally im-

possible to avoid the further conclusion that the commodity was consumed, that is to say, the housing accommodations were occupied and used, in the course of trade and business. Such conclusions make inevitable the over-riding and determinative conclusion that under the provisions of Section 205(e), the plaintiffs never had authority to bring this action, and any authority to bring any action on account of the overcharge was at all times in the Administrator and not in the plaintiffs.

While no case involving rentals has been observed in reported judicial opinion, the following are enlightening with respect to proper construction of Section 205(e) of the Act: Bowles v. Glick Bros. Lumber Co., 9 Cir., 1945, 146 F.2d 566, certiorari denied for failure to comply with rules of court 325 U.S. 877, 65 S.Ct. 1554, 89 L.Ed. 1994; Bowles v. Madl, 10 Cir., 1945, 153 F. 2d 21; Bowles v. Silverman, D.C.S.D.1944, 57 F.Supp. 990; Bowles v. Chew, D.C.N.D. Cal.1944, 53 F.Supp. 787; Bowles v. Joseph Denunzio Fruit Co., D.C.W.D.Ky.1944, 55 F.Supp. 9; Bowles v. Rogers, D.C.N.D.Ind. 1944, 57 F.Supp. 987; Morrison v. Taylor, 5 Cir., 1944, 145 F.2d 466; Lightbody v. Russell, 1944, 293 N.Y. 492, 58 N.E.2d 508.

The motion for an instructed verdict in favor of the defendant and against the plaintiffs was accordingly granted.