**MESSER v. MAMCHES et al.**

**Civil Action No. 1653-M.**

District Court, S. D. Florida,
Miami Division.

April 10, 1947.

Rasco & Esslinger, of Miami Beach, Fla., for plaintiff.

Price & Price, of Miami, Fla., for defendants.

DeVANE, District Judge.

Samuel Paul Messer brought this action against Maurice Mamches and Ethel Mamches, defendants, seeking to recover treble damages and attorney's fee for an alleged overcharge in rent for housing accommodation known as "the furnished front house" at 621 Lennox Avenue, Miami Beach, Dade County, Florida.

In their answer defendants set up several defenses, among them being the defense that the housing accommodation in question was leased for use and consumption in the course of trade and business and was not for consumption other than in the course of trade and business. Defendants also filed a Motion to Dismiss on this ground. When the case came on for trial the court first restricted the trial to this issue to determine whether plaintiff had the right under the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 901 et seq., to maintain this action.

The evidence shows that under date of February 15, 1946, the parties executed a lease covering the above premises for a term commencing the 4th of February, 1946 and expiring on the 5th of May, 1947. The premises were leased furnished by plaintiff to be operated as a rooming house and the lease contained numerous covenants and restrictions as to its operation as such. By the lease plaintiff was authorized to make certain alterations of the premises so as to increase its rooming capacity. He was allowed to convert a screened porch into two bedrooms and the sun room into a bedroom by installing temporary screens and partitions.

Immediately upon the execution of the lease plaintiff secured from the State Hotel Commission and from the City of Miami Beach licenses to operate the property as a rooming house, containing nine rooms. On February 5, 1946 plaintiff registered with the Office of Price Administration maximum rents for the nine rooms to be offered for rent. It is noted that this registration was filed with the Office of Price Administration by plaintiff before the lease covering the premises had been executed or licenses secured to operate the property as a rooming house.

A sketch of the floor plans introduced in evidence indicates that the dwelling when used as a residence consisted of a living room, sun room, screened porch, dining room and kitchen on the first floor and four bedrooms and three baths on the second floor. The sketch and the evidence shows that the sun room was made into a bedroom, the screened porch was made into two bedrooms and plaintiff registered the dining room and living room as bedrooms with the State, City and Office of Price Administration. The sketch shows that a bath was installed in the corner of the kitchen, but the evidence does not show when this bath was installed.

The registration filed by plaintiff with the Office of Price Administration included the nine bedrooms enumerated above. Plaintiff registered these rooms at a daily

rate for one person from $10 to $15 and correspondingly higher rates for two and three persons. The rooms were also registered at a weekly rate for one person from $60 to $100 and at correspondingly higher rates for two and three persons. Monthly rates were also shown for one person from $200 to $350 and correspondingly higher rates for two and three persons.

The Office of Price Administration reduced the rental charged by defendants to plaintiff to a seasonal basis, varying from a low of $75 per month for the months of June, July, August, September and October to a high of $350 per month for the month of February. The sum of the total seasonal rates amounted to $1,800 per annum. The Office of Price Administration, at the same time, reduced substantially the rates of rentals established by plaintiff for the several rooms. These were likewise fixed on a seasonal basis.

When the parties met to execute the lease to the premises some questions arose as to whether the lease prohibited plaintiff from serving meals to guests and to remove any doubt upon the subject plaintiff requested and defendants consented and gave plaintiff a letter in which defendants granted to plaintiff the privilege to sell food in the premises. Plaintiff testified, and his testimony in this respect is not disputed, that he never exercised the privilege granted by this letter and never sold any food to guests or anyone else. The record shows that the zoning regulations of Miami Beach prohibit the sale of food on the premises to anyone other than guests.

Plaintiff testified that he came to Miami Beach, Florida with his family, from New York about December 22, 1945; that he was, by profession, a schoolteacher, and had been teaching in City College, New York City, prior to coming to Florida and that he is now Instructor at the School of Education, University of Miami. He testified that his reason for coming to Florida was because of the health of one of his two children; that he had endeavored to rent a home or apartment for the use of himself and family and had been unable to do so and that he rented the property in question, primarily, for a home. He testified further that his family occupied as their living quarters the kitchen, dining room, which he turned into a bedroom, the sun porch, also used as a bedroom, and one of the rooms on the screened porch. He testified that the living room had never been used as a bedroom but was used jointly by his family and the guests in the house. The testimony is to the effect that he continuously offered for rent five bedrooms, four of them being on the second floor and the fifth being one of the screened porch temporary rooms. He testified further that the second screened porch bedroom had been rented for short periods on a few occasions when no member of his family was visiting him, but that it was not generally offered for rent.

The question presented upon the record is whether plaintiff is authorized to bring and maintain this action under Section 205(e) of the Emergency Price Control Act of 1942, as amended. Section 205(e) of the Act, as amended, provides that if a person selling a commodity violates a regulation prescribing a maximum price, the person who buys the commodity "for use or consumption other than in course of trade or business" may bring an action against the seller on account of the overcharge; but if the purchaser for any reason is not entitled to bring the action, the Administrator may institute such action in behalf of the United States. In Bowles, Administrator, v. Seminole Rock & Sand Company, 145 F.2d 482, the Circuit Court of Appeals for the Fifth Circuit, held that where a commodity is consumed in the course of business of the purchaser and where the price charged exceeded the maximum provided by the regulations of the Office of Price Administration, the cause of action arising from such unlawful act was vested by the statutes in the Administrator only. See also Bowles, Administrator, v. Glick Brothers Lumber Company, 9 Cir., 146 F.2d 566.

The only case precisely on this question called to the attention of the court is the case of Ison et ux. v. Baker et al., 66 F. Supp. 645, decided by District Judge Diamond for the District of Alaska. In this case Judge Diamond, on substantially the same state of facts, held that the tenant could not maintain an action for overcharges in rental; that the authority to

bring such action resided in the Price Administrator alone.

The Court has reached the same conclusion in this case as did Judge Diamond in the Ison Case. The evidence shows that the predominant use made of the premises in question was that of a rooming house and if the provisions of Section 205(e) are applicable to rooming house rentals generally, they are applicable here.

The Court holds that plaintiff has no right to maintain this action; that such right resides in the Price Administrator alone.

A judgment will be entered dismissing this case in conformity with this memorandum decision.