**BRAY v. PECK.**

No. 12557.

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1951.

Bent & Clapp, Los Angeles, Cal., for appellant.

Perry Bertram, Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and BIGGS and ORR, Circuit Judges.

BIGGS, Circuit Judge.

The instant suit was brought by Bray against Peck under Section 205 of the Housing and Rent Act of 1947,[1] to recover threefold damages for alleged overcharges of rent on housing accommodations in Los Angeles, and a reasonable attorney's fee.

The premises as a whole were registered originally with the Office of Price Administration under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., by the then owner, Gilbert, and testimony showed that the rent for the unfurnished structure was $45.00 per month on March 1, 1942, the maximum rent date. Date of registration was not given. On November 4, 1942, six rooms within the dwelling house were registered by a lessee, Barrett, on Form DH-D covering "Registration of Hotels, Rooming Houses * *". On November 4, 1946, Chambers, then the owner-occupier of the premises,[2] registered on a similar form six additional rooms in the dwelling house and an adjacent building, formerly a garage but later converted to housing, at which time he designated the "establishment" on the form as a "hotel", employing the name "Rilla Hotel".

Peck acquired the property and took over its operation in October, 1947. On May 7, 1948, by a written contract, Bray agreed to pay Peck $7,000 as "a total purchase price"[3] for the "furniture, furnishings and lease of the property."[4] A rental of $175 a month for one year and most of the $7,000 was paid by Bray to Peck. Smith, the real estate agent who negotiated the lease, stated that he had suggested the sum of $7,500 as the purchase price of the furniture on the premises. Smith testified nonetheless that in arriving at the suggested purchase price of $7,500 for the furniture, he deemed the "lease and furniture" to be a business and that if that business could "be paid for out of the net profits between twenty-four and thirty months" it could be considered a "good deal" from the point of view of the purchaser. He was then asked: "In other words you evaluated the furniture on the basis of its ability to produce the income from that property?" He replied that he had done so, basing his conclusion on the "net income" recoverable. Smith also stated that the purchase price was for "a leasehold interest or business".

There was testimony that the furniture was worth less than $900. It is well settled of course that the sale of furniture at an excessive price may not be employed as a subterfuge or as a cover to conceal a rent increase in excess of the rent prescribed by the Housing Expediter. See Sections 202(e), 206(a) of the Act and Section 8 of Controlled Housing Rent Regulation, 12 F.R. 4337.[5] Overcharges by way of voluntary agreement will not be sustained. United States v. Grubl, 9 Cir., 186 F.2d 470. It is conceded that Peck did not

1. See 61 Stat. 199, 50 U.S.C.A.Appendix, § 1895.

2. The record does not disclose when Chambers became the owner-occupier of the property.

3. So referred to in the rental contract, Exhibit "H".

4. $4,000 was paid in cash; the balance was secured by a chattel mortgage on the furniture.

5. The regulation in pertinent part provides that, " * * * no person shall require a tenant or prospective tenant to purchase or agree to purchase furniture

receive the written consent of the Housing Expediter to sell the furniture as required by the regulation referred to.[6]

Peck insists that the premises were decontrolled and that he could charge Bray whatever he pleased for rent and for the furniture. Bray contends to the contrary. The case in principal part turns, therefore, on the application of Section 202(c) (1) of the Housing and Rent Act of 1947, 61 Stat. 197.[7] The statute provided: "As used in this title—(c) The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—(1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and unkeep of furniture and fixtures, and bellboy service * * *".

Section 204(d) provided: "The Housing Expediter is authorized to issue such regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisons of this section and section 202(c)." Pursuant to this section the Housing Expediter promulgated amended Rent Regulation, § 825.5, Section 1(b) (2) (i), effective April 1, 1948, 13 F.R. 1874, which stated: "* * * Every landlord of rooms * *, who has not filed an application for decontrol prior to April 1, 1948, shall on or before June 1, 1948, file in the area rent office a report of decontrol of such accommodations on a form provided by the Expediter." It will be observed, however, that the clause contained in § 825.5, Section 1(b) (8) of the Rent Regulation effective July 1, 1947, 12 F.R. 4303, was omitted; that is to say, was not re-promulgated as part of the Rent Regulation issued by the Expediter on April 1, 1948 referred to and quoted in the previous sentence of this opinion. This clause was as follows: "*And provided, further,* That if a landlord fails to file said application for decontrol within the applicable specified period, such housing accommodations shall be and remain subject to the provisions of this regulation until the date on which he files said application." Moreover, the whole Regulation covering decontrol as to hotels generally was omitted from the Rent Regulations promulgated under the amendments to the Housing and Rent Act of

---

or any other property as a condition of renting housing accommodations unless the prior written consent of the Expediter is obtained."

6. The learned District Judge stated, "The defendant did not require the plaintiff to purchase * * * [the] furniture as a condition of renting or leasing the * * * premises * * * [T]he plaintiff offered to purchase * * * [the furniture] on the * * * terms [stated] and defendant accepted plaintiff's offer." See Finding of Fact No. 8. The first statement quoted finds support in the record if it be construed to mean, as we do construe it, that the plaintiff purchased the furniture as part of a going business or leasehold for which the sum of $7,000 was paid. Since the finding may be said to effect substantial justice we would accept it were it not for the necessity of remand on other grounds. We are not unmindful that the form of sale was used in regard to the furniture but we look through the form to the substance of the transaction. Ison v. Baker, D.C., 66 F.Supp. 645, 650; Mess-

er v. Mamches, D.C., 71 F.Supp. 197, and Burns v. Donohue, D.C., 79 F.Supp. 107.

We point out also that apparently the court below in its findings referred only to the decontrol of the rooms within the structure rather than the decontrol of the total structure which is the point to be established. If it was the intention of the court below to establish this fact through the regulation covering structures subject to underlying leases (13 F. R. 1861, § 825.1, Section 1(b) (iv) (b) ), we would call attention to the fact, as shown at a later point in this opinion, that the status of the establishment on June 30, 1947 would control, and not the status on the date of the lease, as given in the findings.

7. The statute as it existed on May 21, 1948 controls the case. See Acts of June 30, 1947, c. 163, 61 Stat. 193, March 30, 1948, c. 161, 62 Stat. 93. The statute in its present form is to be found in 50 U.S.C.A.Appendix, § 1892. It is unnecessary to refer to subsequent amendments for they are irrelevant to the issue presented here.

1947[8] effected by the Housing and Rent Act of 1949.[9] It would follow, we think, that on the date when the lease in the instant case was executed, viz., on May 21, 1948, no application for decontrol was necessary. This view is confirmed by examination of the form (D-95) referred to in the amended regulation of April 1, 1948, quoted supra, which by its own terms is designated simply as a "Report to be filed in the Area Office by the hotel operator. A "Note to the Landlord" printed on the back of the form states that upon its receipt the area Rent Director will "date-stamp" a copy and return it to the operator. The Note goes on to state, "The acknowledgment of receipt of this form shall not be interpreted as an approval or disapproval of decontrol." No order seems to be entered on the application.

We conclude, therefore, that whatever may have been the interpretation which might have been put upon the application of Section 202(c) (1) of the Housing and Rent Act of 1947 prior to the change in the Regulation to which we have referred, the statute clearly must be deemed to have been self-executing at least after April 1, 1948, the effective date of the change.[10] It follows that if the accommodations in the case at bar met the test laid down by the statute and the pertinent

Regulation[11] promulgated thereunder, they must be considered to have been automatically decontrolled by the Act itself.

But one other step is necessary in order to resolve the riddle. The Regulation last cited dealt with hotel accommodations. Another Regulation, relating to exempted housing, must be applied in order to decontrol the total structure. This is contained in 13 F.R. 1861, § 825.1, Section 1(b) (iv) (b). It provided, "Entire structures or premises wherein 25 or less rooms are rented or offered for rent by any lessee, sublessee, or other tenant of such entire structures or premises * * *" shall be exempt from control "*Provided*, That all of the housing accommodations in such structures or premises are exempt or decontrolled under the provisions of this section * * *". If the rooms within the structure, some of which were originally registered by Barrett in 1942 and others by Chambers in 1946, are found to have been hotel accommodations as discussed hereinafter, it would appear that the conditions set forth in the Regulation last quoted were met, and the total structure, originally registered by the then owner, Gilbert, in 1942, at which time Barrett was the lessee, should be found to have been automatically decontrolled[12] under Section

8. See 14 F.R. 1582 et seq.

9. P.L. 31, 81st Cong. 1st Sess., March 30, 1949.

10. Although for the purpose of this opinion the exact date on which this clause was first omitted is not pertinent, the Expediter probably intended to omit it in the amendment issued August 22, 1947 (12 F.R. 5699). Although the amendment purported to apply to Section 1(b) (8) (iv) (which referred to rooms in establishments other than hotels or rooming houses) it went on to say: "Every landlord of all such rooms referred to in this paragraph (8), except rooms in motor courts. shall file in the area rent office an application for decontrol of such rooms on a form provided by the Expediter within 60 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later."

See Woods v. Ginocchio, 9 Cir., 180 F. 2d 484, for a somewhat analogous situation dealing with newly constructed hous-

ing accommodations, but in which the parallel regulation (12 F.R. 5697, issued Aug. 22, 1947) gave the landlord the option of filing a report of decontrol.

It might be well to point out in dealing with the instant case that the total premises are covered by regulations governing "Controlled Housing" whereas the rental of rooms therein is covered by regulations governing "Controlled Rooms in Rooming Houses and Other Establishments". Parallel regulations and amendments have been issued simultaneously, frequently with little distinction in terms.

11. The Regulation is set out in 13 F.R. 1874, § 825.5, Section 1(2) (i) and need not be repeated here since it follows the statute in general terms.

12. We can find no reported decision in which the circumstances were identical or even closely analogous to those at bar. See, however, Gates v. Woods, 4 Cir., 169 F.2d 440, 442–443; Woods v. Griffen, D.C.Nev., 90 F.Supp. 1017; Unit-

202(c) (1). If so, Peck was entitled to charge Bray a sum in excess of the amount of the maximum rent for the total premises registered in the office of the Area Rent Director as of March 1, 1942, the control date, and he was also legally entitled to sell the furniture to Bray at the agreed, or any other price, without first obtaining the consent of the Area Rent Director.

[4] The learned District Judge found the premises to have been decontrolled. It must be pointed out, however, that by the terms of the pertinent Rent Regulation, 13 F.R. 1874, § 825.5, Section 1(b) (2) (i) and the decisions thereunder, June 30, 1947 is the critical date for determining the status of the premises. See Woods v. Oak Park Chateau Corp., 7 Cir., 179 F.2d 611; Woods v. Benson Hotel Corp., 8 Cir., 177 F.2d 543; Woods v. Western Holding Corp., 8 Cir., 173 F.2d 655, and Woods v. Drolson Co., D.C.D.Minn., 75 F.Supp. 758. Although Congress had expressed dissatisfaction with some of the regulations, which were changed by the Expediter in order to conform with Congressional intent,[13] there appears to have been no criticism of this cut-off date. A review of legislative history of subsequent amendments fails to show any intention of changing it. It remained in the Regulations issued April 1, 1949, 14 F.R. 1582. An exception was made in the case of Woods v. Kourmadas, 6 Cir., 180 F.2d 255, but in the cited case, as in Koepke v. Fontecchio, 9 Cir., 177 F.2d 125, the premises were unoccupied on June 30, 1947. When they were opened in July 1947, they were known and operated as a hotel.

The findings of the court below are not based on the status of the premises as of this critical date. Upon remand this must be done.

▪ The pertinent statute, viz., Section 202(c) (1) of the Housing and Rent Act of 1947, emphasizes the fact that the term "controlled housing accommodations" does not include those housing accommodations in any establishment "which is commonly known as a hotel in the community in which it is located * * *". The court below must determine whether or not the establishment which was called the "Rilla Hotel" was commonly known as a hotel in the community. The meaning of the expression "commonly known as a hotel in the community in which it is located" is not defined in the Act and the task of interpretation is indeed a difficult one. We feel, however, that we cannot pass upon this question on the instant record for the only evidence in the record which goes to the critical date, June 30, 1947, is the OPA registration.[14] We can and do call the attention of the court below, however, to some of the pertinent cases construing or attempting to construe the phrase we have quoted. See Woods v. Kourmadas, supra; Adler v. Northern Hotel Co., 7 Cir., 180 F.2d 742; Woods v. Benson, supra; Woods v. Western Holding Corp., supra; United States v. Fritz Properties, D.C.N.D.Calif., 89 F.Supp. 772 and Butler v. Krizan, D.C.D.Minn., 88 F.Supp. 692. We point out, also, that the burden of proof is upon that party which seeks to prove the premises are decontrolled. A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095; Woods v. Oak Park Chateau, supra, and Walling v. General Industries Co., 6 Cir., 155 F.2d 711.

▪ Bray contends that the garage unit was not provided with customary hotel services. However, the testimony presently in the record goes only to the period after June 30, 1947. We call the attention of the court below to the fact that although it is not necessary to show that hotel services were supplied, it must be shown that at least the three basic services,

---

ed States v. Fritz Properties, D.C.N.D. Cal., 89 F.Supp. 772. Cf. Woods v. Benson Hotel Corporation, D.C.Minn., 75 F. Supp. 743, 747–748, affirmed on other grounds, 8 Cir., 168 F.2d 694.

Cf. also Koepke v. Fontecchio, 9 Cir., 177 F.2d 125, 128.

For a discussion of the subject of de-

control see 10 A.L.R.2d pp. 264 et seq., III "Housing accommodations subject to controls".

13. See Woods v. Western Holding Corp., supra, 173 F.2d at page 660.

14. Plaintiff's Exhibit A.

namely, maid service, furnishing and laundering of linens, and upkeep of furniture and fixtures, were available or would have been made available on the critical date if the tenant had requested them. See Woods v. Benson Hotel Corp., D.C.D. Minn., 81 F.Supp. 46, affirmed 8 Cir., 177 F.2d 543 and Butler v. Krizan, supra.

The judgment of the court below is vacated and the case is remanded with the direction to proceed in accordance with this opinion.