HENRY BOUDREAU, Plaintiff, *v.* FOUR HUNDRED JAMES ST., INC., Defendant.

Municipal Court of the City of Syracuse, July 31, 1952.

*Charles M. Dineen* for plaintiff.

*Irving H. Lessen* for defendant.

ABELSON, J. This is an action brought by the plaintiff, Henry Boudreau, against the defendant, Four Hundred James St., Inc., to recover money damages for an alleged overcharge of rent.

It appears that the plaintiff occupied an apartment in the premises situated in the city of Syracuse known and described as Four Hundred James Street, having entered into possession pursuant to an oral agreement on or about the 23d day of May, 1951, and agreed to pay the sum of $18 per week rental; pursuant to such agreement he remained in possession until December 31, 1951.

It is the contention of the plaintiff that the maximum rent prescribed for said apartment was $8.50 per week, inasmuch as there was on file a registration of the rooms in question under the Federal law in 1944, and claims that there is due him from the defendant the sum of $285 in excess of the maximum rent for said premises. He further claims three times the amount of the overcharge, namely, $855, together with attorneys' fees and costs.

The plaintiff asserts that the premises in question are controlled and are subject to the regulations of the Temporary State Housing Rent Commission. The defendant on the other hand claims that the premises are decontrolled and that the premises were commonly known as a hotel and by reason of the fact that the defendant furnished the services set forth in the statute defining a hotel, said premises were excepted from the control law.

There is no question or doubt that if the premises constitute a hotel within the meaning of the statute, said premises are decontrolled. Subdivision 6 of section 9 of the regulations of the Temporary State Housing Rent Commission referring to housing accommodations not subject to rent control, read as follows: " Rooms or other housing accommodations in hotels outside the City of New York ".

The sole question to be decided by this court is whether or not the premises in question, namely, Four Hundred James St., Inc., is a hotel and therefore not subject to the regulations of the Temporary State Housing Rent Commission.

Paragraph (b) of subdivision 2 of section 2 of the State Residential Rent Law (L. 1946, ch. 274, as amd.) reads as follows: " housing accommodations in any establishment commonly regarded as a hotel in the community in which it is located and which customarily provides hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; provided, however, that it shall include housing accommodations in hotels within the cities of Buffalo and New York which have been and still are occupied

by a tenant who has resided in such hotel continuously since December second, nineteen hundred forty-nine, so long as such tenant occupies the same ".

Subdivision 10 of section 3 of the regulations of the Temporary State Housing Rent Commission defined a hotel as follows: " ' Hotel.' Any establishment which on March 1, 1950, was commonly known as a hotel in the City of New York and in which at least an appreciable number of its occupants were provided with customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service, or which services were available with or without extra cost ".

Subdivision 7 of section 3 of the same regulations reads as follows: " ' Apartment.' A room or rooms providing facilities commonly regarded in the community as necessary for a self-contained family unit but not including housing accommodations located in a rooming house or hotel ".

The evidence shows that the premises known as the Snowden Apartment Hotel bears a sign reading " Snowden Apartment Hotel "; that the city directories state that it is known as the Snowden Apartment Hotel, also as the Snowden Hotel; that the telephone directory in both the alphabetical and classified sections list it as the Snowden Apartment Hotel; that other hotels recognized the premises as a hotel and refer transients thereto; that the City of Syracuse recognized the premises as a transient hotel and issued a permit or license for the establishment to collect the transient's hotel tax from its patrons; that the hotel tax was imposed as part of the plaintiff's rent which he paid; and that the premises were advertised as a hotel with hotel services in the newspapers and catered to transient as well as more or less permanent occupants.

The evidence is undisputed that all of the furniture and fixtures are owned and supplied by the defendant; that the same is maintained and kept in repair; that there is a linen service furnished and that linen service is available for all the tenants for which an extra charge is made in some cases and in some cases it is included in the rent; that there is an office with a clerk where the tenants receive their keys, mail, and other desk and clerical services are provided; that there is a lobby with telephones; that there are elevator operators who also act as bellboys when their services are required; that maid service is provided and available; that many thousands of

dollars were expended in each year for the above hotel services. (*Woods* v. *Benson Hotel Corp.*, 81 F. Supp. 46.)

In the above case, which is practically similar to the case at bar, it was held as stated in the headnote (pp. 46–47), that " Under provisions of the Housing and Rent Act for decontrol of hotels, if occupants are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service, hotel, to be entitled to decontrol, is not required to maintain complete standby service for those guests who do not require it, but is only required to be ready, willing and able to furnish tenants with such services upon reasonable notice. Housing and Rent Act of 1947, § 202 (c), 50 U. S. C. A. Appendix, § 1892 (c). Where hotel on June 30, 1947, was ready, willing and able to provide to guests who desired such services, all customary hotel services, housing accommodations therein were decontrolled, notwithstanding that hotel did not maintain in storage, complete furniture for accommodations of those guests who desired partially furnished or unfurnished accommodations and did not maintain standby maid and bellboy service for those guests who did not desire such service. Housing and Rent Act of 1947, § 202 (c), 50 U. S. C. A. Appendix, § 1892 (c)."

The evidence further shows that the premises were decontrolled under the Federal law. Section 202 of the Federal Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1892), among other things, provides as follows: " The term ' controlled housing accommodations ' means housing accommodations in any defense-rental area except that it does not include (1) those housing accommodations in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services, such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service ".

The Housing Expediter issued a regulation which in substance provided that the landlord was required to file in the area rent office a notice for decontrol known as Form D95, and which form had to be filed within thirty days after July 1, 1947.

The evidence shows that the defendant herein filed said application for decontrol on the form provided by the rent office on July 28, 1947. Therefore, under the law and regulations of the Federal Authority the premises were decontrolled as of July 28, 1947, and it necessarily follows that they remained so

decontrolled under the State Residential Rent Law as enacted.

The State law, among other things, provided that it was the intention of the Legislature, under the State Residential Rent Law, when it was enacted that: " *Intent.* It is the intention of this act to subject to control only those housing accommodations, as that term is defined herein, which were subject to rent control and for which a maximum rent was in effect on March first, nineteen hundred fifty, pursuant to federal or local laws ". (L. 1946, ch. 274, § 14, subd. 1, as amd. by L. 1950, ch. 250 and L. 1951, ch. 443.)

I therefore find that the premises in question are decontrolled and not subject to the regulations of the Temporary State Housing Rent Commission. Plaintiff's complaint dismissed.

Judgment may be rendered in favor of the defendant, together with costs and disbursements.