**WOODS, Housing Expediter v. GINOCCHIO.**
**No. 12234.**

United States Court of Appeals
Ninth Circuit.
Feb. 17, 1950.

Ed Dupree, Gen. Counsel, Hugo V. Prucha, Asst. Gen. Counsel, Cecil H. Lichliter, Sp. Lit. Atty., OHE., Washington, D. C., for appellant.

Emerson J. Wilson, Reno, Nevada, for appellee.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

DENMAN, Chief Judge.

The Expediter appeals from a judgment refusing him an injunction restraining appellee landlord from charging in excess of the maximum rent fixed upon the landlord's housing accommodation in Reno, Nevada, by the Rent Director for that area. The judgment denied further equitable relief, refusing to order the landlord to pay to her tenant the sum of $1100.00 alleged excess rentals charged her tenant.

The court, in denying the equitable relief, held that the premises were not within the Expediter's jurisdiction for the fixing of this maximum rent because they were additional housing accommodations created by conversion after February 1, 1947, and hence were not controlled housing accommodations within the Housing and Rent Act of 1947,[1] hereinafter called the Act. Section 202 of that act provides:

"As used in this title—

\* \* \* \* \* \*

"(c) The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—

"(1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; or

"(2) any motor court, or any part thereof; or any tourist home serving transient guests exclusively, or any part thereof; or

"(3) any housing accommodations (A) the construction of which was completed on or after February 1, 1947, or which are additional housing accommodations created by conversion on or after February 1, 1947."

The grounds of the Expediter's appeal are (A) the landlord failed to exhaust the administrative remedy prescribed by the Expediter's regulations and hence could not raise the question of the latter's control of the premises, and (B) the court erroneously decided that the premises were not under the Expediter's jurisdiction.

A. *The landlord, having the option either to seek an administrative ruling as to the Expediter's control of the premises or to wait and defend a suit by the Expediter on the ground of absence of such control, was entitled in this suit in equity to waive the continuance on the administrative proceeding created solely for his benefit and defend on that ground.*

The regulation of the Expediter for this jurisdictional question was promulgated on August 22, 1947, (12 F.R. 5697). Unlike those for other issues under the Act, it gave to the landlord *the option to pursue or not to pursue* an administrative procedure in determining whether the premises were under the Expediter's control. Title 24, Part 825.1(b) (8) C.F.R. Cum.Supp. 1947, provides as to "Housing accommodations the construction of which was completed on or after February 1, 1947, or which are additional housing accommodations created by conversion on or after February 1, 1947," that "Every landlord of housing

1. 61 Stat. 193, 50 U.S.C.A.Appendix, §§ 1881–1906.

486

accommodations referred to in this subparagraph (8) may, *at his option,* file in the area rent office a report of decontrol on a form provided by the Expediter." (Emphasis supplied.)

This option given the landlord must be deemed to have controlling significance. Up to August 22, 1947, the landlord had no such option, the regulation prior thereto (12 F.R. 4331) being "That all housing accommodations referred to in this paragraph (8) shall be subject to this regulation unless the landlord files in the area rent office a report of decontrol on a form provided by the Expediter within 30 days after July 1, 1947, or within 30 days after the date of first renting, whichever is the later: and *Provided further,* That if a landlord fails to file said report of decontrol within the applicable specified period, such housing accommodations shall be and remain subject to the provisions of this regulation until the date on which he files said report."

The landlord started to exercise his option. He filed the application for decontrol, which the area rent director denied. He sought a reconsideration by the area rent director under the advice of the Area Rent Board. The latter advised against decontrol. The area director then sua sponte fixed the rent at $180.00 per month and ordered the repayment of the $1100.00. An informal appeal from denial of the decontrol was taken to and considered by the Regional Administrator. While the jurisdictional question was so under consideration the Expediter, on January 24, 1948, began this suit on the rent order.

The Emergency Price Control Act of 1942[2] required such an issue of jurisdiction to be decided by the Emergency Court of Appeals after pursuing an administrative procedure provided by the Expediter's regulations. The district court then had no power to determine that issue. Yakus v. United States, 321 U.S. 414, 433, 64 S.Ct. 660, 88 L.Ed. 834; Woods v. Kaye, 9 Cir., 175 F.2d 886, 888.

Under the instant Act of 1947, the Expediter agrees, the jurisdictional question ultimately is to be decided by the district court. That is to say, the landlord, having the option under regulation 825.1(b) (8), supra, not to pursue the administrative remedy, could have raised the issue as a defense to the Expediter's present suit, filed on January 24, 1948, without any other action on the former's part, or he could pursue his administrative proceeding to the decision of the litigating Expediter.

In this situation the Regional Administrator on February 10, 1948, decided the appeal on the jurisdictional question before him adversely to the landlord and advised that the "decision in this case rests with the court." This appears in the letter of February 10, 1948, to the landlord as follows:

"This is in further reference to our letter to you dated January 2, 1948.

"Upon investigation, we find that the proceedings in the area rent office were handled in accordance with the Rent Regulations and an interpretation of the regulation by the Regional Rent Attorney.

"As suit has now been filed, *decision in this case rests with the court*

"Yours very truly,
"Ward Cox
"Regional Rent Administrator"
(Emphasis supplied.)

Nine days after this letter, on February 19, 1948, the landlord appeared in this action and moved to dismiss it on the ground, inter alia, "That it does not appear on the face of the Complaint that the premises in question fall within the Act Definition 'Controlled Housing Accommodations' as defined in Act and Regulation sued upon."

The motion was denied, and the landlord's answer then raised the same issue of the Expediter's jurisdiction. The expediter contended, in effect, that the landlord could not waive his right to continue to pursue his optional choice of obtaining the Expediter's decision in an administrative proceeding, despite the Regional Administrator's statement that the administrative process had ceased and the decision rested in the instant proceeding. The district court ruled against the Expediter, holding that the administrative process had terminated

2. 56 Stat. 23, 50 U.S.C.A.Appendix, §§ 901-946.

and that the issue of decontrol was before it. The Expediter then vigorously contested the landlord's contention that the premises were not under the former's jurisdiction.

The Expediter's briefs here treat the situation as if his regulations gave no option to the landlord. He cites Supreme Court decisions like the Yakus case, supra, stressing the value of regulations created by experts like the Expediter, whose subordinates in the administrative process, skilled in housing needs and requirements can best serve the purposes of Congress in determining rental amounts. Here the exact reverse is the view of the Expediter. He sees no necessity for the administrative process, and creates it only for the benefit of the landlord. One must respect an Expediter's views on expedition.

While we cannot agree with the letter of the Regional Administrator that the commencement of this suit deprives the landlord of the right to pursue his administrative remedy, we agree that the decision of the case is with the district court if the landlord waive the further pursuit of his optional administrative remedy and submit to the decision of the court.

Such a disposition of the case facilitates the purpose of Congress for a prompt decision of the rights of both the landlord and tenant. It would be defeating this purpose to follow the suggestion of the Expediter's brief that "the defendant might properly have applied to the District Court for a stay of the enforcement action pending completion by her of the prescribed administrative procedure." Such a stay would, merely have prolonged the uncertainty of both landlord and tenant. Success of the landlord before the Expediter himself would have caused the dismissal of the Expediter's suit, but his more likely adverse decision merely would transfer the jurisdictional issue to that suit. The short and certain expeditious method was to determine that question in this suit and not run the time risk in an adverse decision on the administrative appeal to the Expediter.

We are fully in accord with our opinion in Babcock v. Koepke, 9 Cir., 175 F.2d 923 concerning the necessity of exhausting a *prescribed* administrative remedy, but in that case the optional right of the landlord did not exist. Before the Babcock proceeding commenced in September, 1948, this optional regulation under the 1947 Act had been omitted in the amendments of April 1, 1948, of the regulations for the 1948 Act. (13 F.R. 1862.) It is well established that one need not proceed with optional administrative processes before seeking relief at law from error of the administrator. Levers v. Anderson, 326 U.S. 219, 233, 66 S.Ct. 72, 90 L.Ed. 26; Tucker v. Alexander, 275 U.S. 228, 231, 48 S.Ct. 45, 72 L.Ed. 253; United States v. Abilene and Southern Ry. Co., 265 U.S. 274, 282, 44 S.Ct. 565, 68 L.Ed. 1016; Prendergast v. New York Tel. Co., 262 U.S. 43, 49, 43 S.Ct. 466, 67 L.Ed. 853. It is elemental that equity abhors the doing of unnecessary acts. The Expediter having invoked equity, we think that the district court's decision does equity in holding no merit in his claim that the question of decontrol was not before the court.

B. *The landlord's housing was additional housing accommodations created by conversion after February 1, 1947, within Sec. 202(c) (3) of the Housing and Rent Act of 1947.*

The landlord owned a duplex dwelling building, she living in one and leasing the other. In one unit there were two bedrooms, in the other, one bedroom. Beginning December, 1946, and ending after February 1, 1947, the landlord reconstructed the entire building, tearing out internal partitions, extending the foundations and total area covered by the structure and building up therefrom. The extent of the additions and alterations offered in evidence to the district court appears in the footnote.[3]

3. (a) The entrance to the structure was changed as to location.

(b) The reception hall and closet were previously non-existent.

(c) The southeasterly bedroom was formerly a dinette and the closets in the bedroom were previously non-existent.

(d) The bedroom lying easterly of the

488

Among other additions, the reconstructed building contained three additional single bedrooms to be rented to individual boarders. On August 1, 1947, appellant leased the premises for a "board and rooming house," the lease providing: " * * * for the sole purpose of conducting therein a Guest House (specializing in board and room), and the said Lessees hereby agree that they shall conduct such business herein mentioned in an orderly and peaceful manner, strictly within the city ordinances and state laws."

Upon these facts, the district court found that "the housing accommodations leased by defendant to Matthews S. Weiser and Helen A. Weiser in July, 1947, are additional accommodations created subsequent to February 1, 1947."

■ We agree that the "conversion" of the building is within regulation 825.1(b) 8, that is, it is "a structural change in a residential unit or units involving substantial alterations or remodeling and resulting in the creation of additional housing accommodations."

The court was entitled to infer that a dwelling room is a housing accommodation, and that the addition of three such rooms is an increase in such accommodations. It would be irrational and plainly erroneous and inconsistent with the Act and regulations[4] to hold that there is no decontrol if one own a steel building to consist of five stories, of which but two are first constructed to accommodate a family of four people on each floor, and the owner then add three floors above and converts the structure into a single room boarding house accommodating fifty boarding house tenants, each room to be occupied, say, by unmarried returned veterans.

■ We do not agree with the suggestion of the Expediter that Congress intended in the Act of 1947 to confine the phrase "additional housing accommodations" to housing accommodating families only. There must then have been at least a million returned veterans attending school or seeking employment away from their homes and housed as individuals. It is inconceivable that Congress did not then have them in mind. It was not until the Housing and Rent Act of 1949,[5] in Section 201(c), that Congress amended the Act of 1947 to confine such decontrol to conversion resulting in "additional self-contained family units as defined by regulations issued by" the Expediter. It is apparent that Congress thought that the huge building activity between 1947 and 1949 lessened the need for individual housing rooms.

The judgment denying the equitable relief sought by the Expediter is affirmed.

dining room was previously a kitchen and nook.

(e) The bathroom opening off the bedroom just mentioned was previously a porch or patio.

(f) The dining room was formerly a bedroom.

(g) The closet space off the dining room is a hallway that did not exist previously.

(h) North from the dining room is a hallway that did not exist previously.

(i) The northwesterly bedroom was formerly a living room.

(j) The kitchen was formerly a breakfast nook and kitchen. The kitchen fixtures are new and in new locations.

(k) The breakfast room occupies space that was in part a screen porch and in part a newly added area.

(l) The basement bedroom did not previously exist.

(m) The house is equipped with a single central heating plant. Previously there were two floor furnaces.

(n) Of the five bedrooms on the main floor only the northerly two were previously in existence.

(o) The bath opening off the hallway between the dining room and the kitchen is of different shape and arrangement and contains entirely new fixtures.

(p) Those portions of the exterior walls and the interior partitions that are shaded as shown on Exhibit 1 are new construction and did not previously exist.

4. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L. Ed. 1700; Porter v. Crawford etc. Foundry Co., 9 Cir., 154 F.2d 431, 433. If the Expediter's interpretation of August 25, 1948, that is over seven months after the instant case was commenced, is applicable and is construable to the contrary, we think it "irrational" and "clearly erroneous" within the two cases just cited.

5. Pub.L. No. 31, 81st Cong., 1st Sess., March 30, 1949.