UNITED STATES v. FRITZ PROPERTIES, Inc.

COBLENTZ v. FRITZ PROPERTIES, Inc.

Nos. 29079-E, 29113-E.

United States District Court
N. D. California, S. D.
March 13, 1950.

Sidney Feinberg, William B. Spohn, San Francisco, Cal., for the United States.

Richard Coblentz, San Francisco, Cal., for plaintiff Coblentz.

Philip S. Ehrlich, Albert Axelrod, San Francisco, Cal., for defendant.

ERSKINE, District Judge.

This action charges a violation of the Housing and Rent Act of 1947, as amended by the Housing and Rent Act of 1949. The defendant maintains that the accommodations concerned are decontrolled by virtue of Section 202(c) (1) (A) of the 1949 Act, 50 U.S.C.A.Appendix, § 1892, which reads as follows:

"The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—

"(1) (A) those housing accommodations, in any establishment * * * which is commonly known as a hotel in the community in which it is located * * *."

As a preliminary question, this Court decided, contrary to defendant's contention, that the critical test date to be used in determining whether an establishment is "commonly known as a hotel" and hence decontrolled, is June 30, 1947, as was true under the 1947 Act. There appears to be a conflict in the appellate courts as to the issue. Compare Koepke v. Fontecchio, 9 Cir., 177 F.2d 125, with Woods v. Oak Park Chateu Corp., 7 Cir., 1950, 179 F.2d 611. However, in view of this Court's decision on the remaining issues in the case, further discussion of this preliminary issue is unnecessary, since a contrary holding thereon would not alter the ultimate decision.

Two issues were argued at length before the Court and will be discussed separately. (1) Were the defendant's housing accomodations commonly known as a hotel on June 30, 1947 and thereafter? (2) As a matter of law, is defendant barred from raising this defense because of a failure to exhaust its administrative remedies?

*Defendant's Housing Accommodations Were Commonly Known as a Hotel on June 30, 1947.*

At the commencement of the trial of this action counsel for plaintiff stated that the

sole issue of fact was whether or not on June 30, 1947 the premises involved were "commonly known as a hotel in the community in which it is located." At that time it was conceded these premises on that date furnished the services of a hotel as set forth in the Act. Subsequently during the trial, despite the said concession made by plaintiff at the beginning of the proceedings, there was some attempt made to show that the premises involved did not furnish sufficient services required by the Act to make it a hotel. The evidence abundantly showed that at the effective date of June 30, 1947 these premises were furnishing customary hotel service, including maid service, furnishing and laundering linen, telephone, and secretarial or desk service, bellboy service, and use and upkeep of furniture and fixtures. There was some dispute as to whether or not there was a regular night clerk employed, but it was clear that the services of a night clerk were performed by an employee occupying such a designated position or by some other employee, such as a manager or assistant manager, who assumed the duties of such a night clerk. Similar disputes developed during the trial respecting whether or not other hotel services were performed, but in each instance it appeared that the service was performed even though those who rendered it were not primarily employed for that purpose. In my opinion there is no question that at the effective date the premises involved gave customary hotel service, and that plaintiff's concession that this was so, made at the inception of the trial, was in accordance with the facts.

Accordingly the only issue of fact to be resolved is whether or not on June 30, 1947 the premises involved were "commonly known as a hotel in the community in which it is located". In this respect plaintiff contends that inasmuch as the Housing Expediter has control over the rental charged by a landlord unless such landlord comes within an exception provided for in the statute, the burden of proof is upon the defendant to show that it comes within such exception. There is no reason for me to determine upon whom the burden of proof lies in this case because I have determined from the facts submitted to me that on June 30, 1947 the premises involved were "commonly known as a hotel."

Plaintiff produced the testimony of several hotel owners, operators and real estate men to the effect that on the effective date said premises were "commonly known as an apartment house *and not a hotel*." An example of how inconclusive is the evidence of experts is the fact that the owner of a well known hotel approximately a block from the premises involved said they were commonly known as a hotel, whereas the general manager of such hotel testified to the contrary.

In my opinion the testimony of each of these witnesses was his honest and conscientious belief. However, any expert's testimony respecting whether a certain establishment is "commonly known as a hotel" is more or less colored by his own impressions. As plaintiff's witness de Golia pointed out, when the premises here involved were built they were intended to be de luxe apartments furnishing some accommodations hotels furnished. This was undoubtedly true. But, since the time of de Golia's connection with the premises, conditions have changed, and though he may retain in his mind the impression that the premises are still an apartment building, as he intended them to be, by changes made in operations and by advertising they may have become "commonly known as a hotel."

After all, the question of common knowledge or reputation is not a matter of expert statement alone, but is a matter for the Court to determine from all of the circumstances of the case. Here the expert testimony is evenly divided. But the testimony of defendant's experts is supported by other facts and circumstances which compel the conclusion that, regardless of what the experts say, the premises involved on the effective date June 30, 1947 were "commonly known as a hotel." These facts and circumstances include a volume of documentary evidence which shows that in many ways before June 30, 1947 the premises were held out to the public as a hotel or an apartment hotel. In view of this documentary evidence it is difficult

to conceive that they could have had a reputation to the contrary.

The defendant and present owner acquired the premises sometime in 1944. Long before this date a brochure had been issued and circulated among the public by a former owner describing the premises as "an apartment hotel which caters to both transient and permanent guests." This brochure was used in 1942 and prior thereto, and was distributed to travel agencies and persons inquiring as to the accommodations to be afforded at said premises. The telephone directory of San Francisco shows that prior to the effective date the premises were listed as a hotel apartment or hotel. The American Hotel Association's official Red Book, which is a recognized standard published directory for hotel men and traveling men, lists the premises as an apartment hotel in its 1947 edition. For many years past and prior to 1947 the Playgoer magazine has been published and circulated among the audiences of the theatre going public of San Francisco. Approximately 7,000 of these magazines are issued weekly. The advertisements which appeared in this magazine many years before the effective date advertised the premises here involved as a hotel apartment or apartment hotel. Since 1943 the Zebra Room, a so-called cocktail room, maintained and operated on the said premises, has been advertised in said Playgoer as being situated or located in or on the *Hotel Huntington*. The official Apartment House Association publication contained advertisements about the Zebra Room for several years before 1947 stating that it was located in the "Huntington Apartment Hotel." For a long period prior to June 30, 1947 there were issued and circulated among the public patronizing said Zebra Room match folders upon which were printed the words "located in the Huntington Apartment Hotel." Hat and Coat checks use by the public check room on the premises were printed "Hotel Huntington". Menus used in the dining rooms and printed annoucements of special dinner events designated the premises as the Hotel Huntington. Tickets issued to the public for admission to the Zebra Room for New Year's

Eve 1944–1945 called the premises "Hotel Huntington". Announcements distributed by mail and otherwise to the San Francisco public announcing the opening of the Zebra Room stated that it was located in the Huntington Hotel or the Huntington Apartment Hotel.

A billboard sign adjoining the premises on California Street advertised the Zebra Room and stated it was located in the Hotel Huntington. The awning in front of the building prior to 1947 bore the designation Huntington Hotel Apartments.

For a considerable period prior to June 30, 1947 the establishment issued to its employees in payment of their services and to other parties with whom they had business transactions checks which bore in large type the words "Huntington Apartment Hotel." The registration cards for guests to sign upon registering which were printed prior to June 30, 1947 bore a similar designation. All this printed matter such as brochures, advertisements in magazines, announcements, match folders, registration cards, checks, and hat checks were printed, published and issued prior to June 30, 1947. The important factor to note is that for some time prior to the effective date the establishment had continuously and consistently held itself out to the public generally by various means of advertising as an apartment hotel, where transient as well as permanent guests would be afforded accommodations and customary hotel service. It is inconceivable that this long persistent course of advertising to the public generally in San Francisco did not have the effect of making the establishment "commonly known as a hotel or an apartment hotel." This would be the natural and probable consequence of such a course of advertising and conduct. It seems to me that the best way to determine what an establishment is "commonly known" as is to ascertain how it has been advertised and held out to the public; in this case it is clear the establishment here involved prior to June 30, 1947 was held out and advertised to the public as a hotel or apartment hotel.

Moreover, the evidence shows that the public accepted and recognized this advertisement. The Zebra Room and the dining

rooms were patronized by the public generally; the guests of the hotel were but a small portion of this patronage. Furthermore, during the year 1947 many transient guests from all parts of the world made reservations for accommodations and registered at this establishment, and many such registrations were made through other hotels. Of course both plaintiff and defendant rely somewhat upon the Interpretative Bulletin issued by the Housing Expediter on July 1, 1948, and referred to by the 8th Circuit of the Court of Appeals in Woods v. Western Holding Corp., 173 F.2d 655. This bulletin seems to support the defendant. It not only states that "apartment hotels" are included within the meaning of the Act of 1947 respecting decontrolled establishments, but also states that one factor in determining whether or not an establishment comes within the exception of the Act is whether or not on the effective date it was furnishing customary hotel service. The evidence shows that the hotel services furnished by the defendant exceeded those furnished by most hotels, and at least equalled those furnished by the best.

Plaintiff contends that much of the holding out to the public and advertisements to the public that the establishment involved was an apartment hotel was done for the sole purpose of coming within the exception to the statute and was self-serving. I cannot agree with this argument because most of this holding out and advertising occurred before June 30, 1947, and virtually all of it occurred before the said Bulletin was issued a year later, or before the opinion in Woods v. Western Holding Corp. was handed down. Of course, in a sense any advertisement is self-serving, but if it be persistent and continuous enough to create in the public mind a general reputation, it makes no difference what thoughts or motives actuated it.

Plaintiff relies heavily upon the contention that defendant did not always refer to its establishment as a hotel or hotel apartment; documentary evidence was produced in support of this argument. For instance, defendant on June 30, 1947 filed a petition with plaintiff for adjustment of rent and there described itself as "Huntington Apartments" (Exhibit 3). Again, in some of the stationery of the Nicholas Corporation, a predecessor of defendant as owner of the establishment, it referred on its letterhead to the establishment as the Huntington Apartments. Then it also appears that in 1947 the establishment carried its license in the Health Department as an apartment, and did not attempt to make the change to a hotel until after June 30, 1947. It also appeared that the establishment did not include itself in 1947 as a member of a hotel association purportedly conducted by one Crummy, and during that year maintained its agreement with the Apartment House employees union rather than with the union representing hotel employees. These and a few other facts to the same effect were adduced by plaintiff, but in the end they cannot overcome the conclusion that the holding out and advertisement heretofore described made this establishment "commonly known as a hotel or apartment hotel." Most of this documentary proof upon which plaintiff relies consisted of statements which would not come to the attention of the general public, or effect the reputation of the establishment in the eyes of the public. On the contrary, as heretofore recited, the documents, instruments, advertisements and writings which were widely distributed to the public were calculated to and did give the public the impression that the establishment was an apartment hotel.

In this connection counsel for plaintiff in his argument referred to the statement in Woods v. Western Holding Corp., supra, where the Court used the words,—"that the owner and operator consistently took the position, *in dealing with public authorities* and with the general public, that the establishments were hotels." [173 F.2d 657.] This quotation is not a pronouncement by the Court of the applicable law, but is contained in a summarization of the findings of the trial court in that case. The fact that in dealing with certain public authorities the defendant referred to the establishment as an apartment house is a circumstance tending to show it was not commonly known as a hotel, but this circumstance can be overcome by other circumstances leading

to the contrary conclusion, which is the situation in this case.

Counsel for plaintiff points out that this establishment catered predominantly to permanent guests and not to transients. This was the same situation in the Woods case, and yet it was there held that this fact did not affect the conclusion that the premises involved were "commonly known as an apartment hotel" and therefore were decontrolled. In fact the situation involved in the last-mentioned case is very similar to that involved here, and that case lends support to the conclusion I have reached.

■ For the foregoing reasons I have reached the conclusion that on June 30, 1947 the premises involved in this case were "commonly known as an apartment hotel."

*Defendant Is Not Barred From Raising The Defense That Its Establishment Was Decontrolled.*

Faced with the conflict in the evidence, which the Court has determined in favor of defendant, plaintiff contends that the defense of decontrol may not be raised in this action, because the defendant did not exhaust all the available administrative remedies. Defendant made an original application for decontrol under the terms of the statute; in rejecting this application the Area Rent Director made an initial determination that defendant was not excepted from the terms of the statute. The issue of law that must now be decided is whether or not defendant was obliged to invoke the appeal procedures authorized by the regulations— appeal to the Regional Administrator and then to the Housing Expediter—in order not to be barred from raising in this enforcement proceeding the defense that the statute exempted it from control. Decision on this issue has been delayed because it was thought that the question might be decided by the Court of Appeal for the Ninth Circuit in the case of Woods v. Ginocchio, 1950, 180 F.2d 484. A difference in the applicable regulations, however, made such a determination unnecessary in that case.

This issue must be distinguished from that facing this Court in the earlier Declaratory Judgment Action, later dismissed, wherein the present defendant, Fritz Properties Inc., rather than the United States, was the plaintiff.

■ Another distinction which should be noted is that between the so-called "exhaustion of administrative remedies" doctrine and the "primary jurisdiction" or "primary determination" doctrine. Although the two doctrines are often included within the term "exhaustion of remedies", in essence they involve separate and distinguishable concepts. The "exhaustion" doctrine is a product of judicial self-limitation resembling the requirement of equity jurisdiction—that a litigant has no standing in equity where he has an adequate remedy at law—although matters of comity and need for orderly administrative procedure helped shape the doctrine. The "preliminary jurisdiction" rule, on the other hand, presupposes a complete absence of judicial power to deal with the matter because of a legislative grant of exclusive primary jurisdiction to an administrative body. The basis for the rule is the desire and need for expert administrative judgment on a technical question. The purpose is to prevent a party from bringing a controversy into court prior to the securing of this administrative judgment on a question usually involving complex evidentiary material. See: Thompson v. Texas Mex. Ry. Co., 238 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132; Tex. & P. Ry. Co. v. Amer. Tie & Timber Co., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255.

■ It is the opinion of this Court that under the circumstances of this case, neither doctrine bars the defendant in this particular proceeding from raising the defense of non-applicability of the statute. This jurisdictional issue—a question of mixed law and fact—is one which a court of law is particularly capable of determining. Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. The amended rent procedural regulations of the Housing Expe-

diter, as well as the revised forms relating to decontrolled accommodations, tend to substantiate this conclusion.

Even if the above conclusion were incorrect, it is clear that in the instant case there *was* a primary determination by the Area Rent Director. The defendant complied with the regulations to the extent of making the initial application for decontrol; the Area Rent Director then made a preliminary investigation, informed the defendant that the establishment was not eligible for decontrol, and issued an order to that effect, rejecting the defendant's application for decontrol. This action of the parties fulfilled any requirement of primary determination by the administrative body, assuming there is such a requirement in this case. The only remaining question would be whether the doctrine of exhaustion of administrative remedies can be raised to bar the defendant from contesting the determination of jurisdiction by the Area Rent Director, where it failed to pursue the *appeal* procedures provided for in the regulations.

It cannot be denied that an administrative remedy was available to the defendant here for securing a reversal of the local determination and that such remedies were not exhausted. Assuming such failure bars the defendant from seeking affirmative relief, it is quite a different matter to say that he must necessarily exhaust those remedies in order to challenge the administrative order by way of defense to its enforcement. In view of the reasonable assumption that this enforcement proceeding was brought with the knowledge of the Regional Administrator and the Housing Expediter, a reversal of the local determination that the defendant was not decontrolled seems unlikely.

Woods v. Benson Hotel Corp., D.C., 75 F.Supp. 743, cited by both parties, is authority only for the proposition that initial recourse must be made to the administrative agency. The issue of exhaustion of administrative remedies was not discussed nor decided. The cases of Endicott-Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424; Babcock v. Koepke, 9 Cir., 175 F.2d 923; Graylyn Bainbridge Corp. v.

Woods, 8 Cir., 173 F.2d 290; and Gates v. Woods, 4 Cir., 169 F.2d 440, are analogous in effect, in that they all involved an attempt to obtain a court determination of the issue prior to an initial determination by the administrative body. Cf. Federal Power Comm. v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, and Public Utility Comm. v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L. Ed. 396, permitting an initial court determination of agency jurisdiction where the agency's contention was plainly invalid on its face—an error of law.

Once primary jurisdiction has been assumed by the administrative body the exhaustion of remedies doctrine is in issue. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, is usually cited as a leading case in support of the doctrine. That case can more logically be explained in terms of primary jurisdiction, since the court refused to consider the question of jurisdiction initially and denied an injunction against an agency inquiry as to jurisdiction. However, the Supreme Court appeared to rest its decision on the exhaustion of remedies doctrine; such an approach was justified since the statute itself provided for judicial review of the determination of the National Labor Relations Board. The petitioner was attempting to circumvent this procedure by obtaining an initial determination by a District Court.

Other cases cited by plaintiff support the rule that where Congress has set up an administrative procedure, with express provisions in the statute for judicial review by a *particular* Court of all issues involved, a party may not circumvent this procedure by bringing a separate action in another court to determine the question of jurisdiction. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, and Macauley v. Waterman S. S. Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839 (suits for declaratory judgment, where the applicable statute, the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191, expressly provided for a de novo appeal to the Tax Court). These cases are not controlling here.

Where the issue involved is not that of the jurisdiction of the administrative body, but merely a question of whether it acted correctly, generally a question of fact, it is clear that an independent action for an injunction cannot be brought prior to an exhaustion of administrative remedies. Smith v. Duldner, 6 Cir., 175 F.2d 629. Nor can the defenses of lack of procedural due process or invalidity of administrative regulations on other than jurisdictional grounds be raised as a defense to an enforcement proceeding. Yakus v. U. S., 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Somewhat similar is the case of U. S. v. Ruzicka, 329 U.S. 287, 67 S.Ct. 207, 91 L. Ed. 290, involving an action to enforce an order of the Secretary of Agriculture issued under authority of AAA regulations. The statute *expressly* provided for judicial review by the District Court in *separate* proceedings, which were not to interfere with the enforcement procedures. The Supreme Court held, primarily on the basis of statutory intent, that the defendant in the enforcement action could not raise the defense of a mistake of fact on the part of the administrative agency, but was left to his administrative remedy provided elsewhere in the Act, including the aforementioned judicial review. Accord, La Verne Co-op. Citrus Ass'n v. U. S., 9 Cir., 143 F.2d 415 (review action already pending in another court in accord with the statutory scheme).

On the other hand, in Federal Power Comm. v. Panhandle Eastern Pipe Line Co., 337 U.S. 498, 69 S.Ct. 1251, the Supreme Court permitted an initial court determination of agency jurisdiction prior to any agency investigation, on the ground that where the agency's assertion of jurisdiction is wrong on its face as a matter of law, no initial or final determination by the agency is required prior to court determination of the issue.

The instant case falls somewhere between these two extremes. It differs from the Panhandle Pipe Line case in that the assertion of jurisdiction here was not invalid on its face, but involved a question of mixed law and fact, admittedly a nebulous distinction, but having sufficient validity to warrant at least a primary resort to the administrative body, which was done in this case. On the other hand, unlike the Smith, Yakus, Ruzicka, and La Verne line of cases, the basic question of jurisdiction is in issue, and the statutory scheme includes no express provision for appeal or judicial review. In short, the question would seem to be novel on its facts.

At one time the Supreme Court seemed to feel that the exhaustion of remedies rule was one of judicial administration, and not merely a rule governing the exercise of discretion. Myers v. Bethlehem Shipbuilding Corp., supra. However, in the later case of Levers v. Anderson, 326 U.S. 219, 66 Sup.Ct. 72, 90 L.Ed. 26, the Court seemed to refute any mandatory implications, in holding that the rule does not automatically require that judicial review must be denied where a rehearing before an administrative body is authorized, but not sought. The implication is that orderly administrative procedure can be achieved as well through a discretionary rather than a mandatory application of the exhaustion doctrine.

Assuming that the doctrine is discretionary in some cases, should it be applied to bar the defense in this action? It can be argued that to allow the defense here enables a party to disregard the administrative appeal procedure with impunity and to obtain a judicial determination of the issue at any time merely by violating the statute. The Court in the La Verne case apparently had this criticism in mind when it stated that "the doctrines of primary jurisdiction and of administrative finality are equally persuasive where the issue is raised by defending parties as where it is raised by moving parties." La Verne Co-op. Citrus Ass'n v. U. S., supra, 143 F.2d at page 420. However, even if the court there intended that the statement should apply as well to the exhaustion of remedies doctrine which was actually in issue in that case, such dicta should be limited by the facts of the La Verne case; all that was actually held in that case was that where the statute expressly grants judicial review

by a certain procedure, that procedure is exclusive, irrespective of whether the party seeking the judicial determination is the plaintiff or the defendant.

A proper exercise of judicial discretion in the instant case should allow the defendant to raise the issue of jurisdiction in this enforcement action, irrespective of whether it might be allowed to raise the same issue, or any other issue, at the same stage of the controversy, by a declaratory judgment action, or action for injunctive relief. Lacking express statutory provision to the contrary, orderly administrative procedure is achieved and premature and unnecessary litigation avoided by the requirement of an initial determination of the issue of jurisdiction by the administrative agency.

As a practical matter, such a result appears sound. The only controversy here is whether the defendant was "commonly known as a hotel." To require an appeal from the initial administrative determination, which was made without formal hearing or written record of testimony, would seem a futile gesture. The determination of such an issue is peculiarly within the competence of the local administrative body; any basis for reversal of this determination by strangers to the scene seems to be missing. It should also be noted that the fear of wholesale violations of such administrative order are probably unfounded, since a party wishing to challenge the administrative jurisdiction in such a manner, runs the risk of liability for treble damages if the administrative contention be upheld by the court, a sufficient deterrent in a close case.

On the basis of the foregoing analysis, it is the opinion of this Court that the defendant is not barred by the exhaustion of remedies doctrine from raising his defense of exemption from the statute.

*Conclusion*

For the foregoing reasons defendant is directed to prepare appropriate findings of fact and conclusions of law and judgment in its favor in accordance with the views herein expressed.