**UNITED STATES v. McCRILLIS et al.**

Civ. No. 1087.

United States District Court
D. Rhode Island.

March 27, 1952.

184

Vincent L. Scanlon, Trial Attorney, Office of the Housing Expediter, Boston, Mass., for the United States.

Harold S. Moskol, of Providence, R. I. for defendants.

LEAHY, District Judge.

This is an action by the United States of America for restitution, damages and injunctive relief under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A. Appendix, § 1881 et seq.

The complaint alleges in substance that the defendants demanded and received rents from certain tenants for the use and occupancy of premises used as a rooming house at rates in excess of the maximum legal rent.

The defendants' answer contains various admissions and denials. The defendants deny that they received rent in excess of the lawful amount, and allege that the plaintiff's action and the Housing and Rent Act of 1947, as amended, are both unconstitutional and void. They further allege that if the alleged violations did occur they were neither willful on the part of the defendants nor the result of their failure to take practical precautions against their occurrence.

The plaintiff served requests for admissions on the defendants which were answered. The plaintiff's motion for summary judgment was denied because the Court found that there was a genuine issue as to material facts. The case then came on for hearing on the merits.

█ I find no merit in the defendants' allegation that the Housing and Rent Act of 1947, as amended, is unconstitutional. Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596; Woods v. Fliss, 7 Cir., 168 F.2d 612, certiorari denied, 335 U.S. 886, 69 S.Ct. 238, 93 L.Ed. 425. Furthermore, the defendants have offered nothing in support of this allegation, and it may be assumed that this defense has been waived.

It appears that the remaining issues can be disposed of by determining what the actual rent for these premises was on March 1, 1942; and whether or not the defendants are barred from asserting their defense on the ground that they have not exhausted their administrative remedies.

The defendants' witnesses have testified substantially as follows: That in November or December of 1941 Charles Imhoff, being desirous of renting the premises involved herein, conferred with Edgar McCrillis, one of the landlord defendants; that McCrillis stated to Imhoff that the rent was $65 per month; that Imhoff replied that he could not pay this amount but would pay $35 per month; that thereupon a friend of Imhoff's, Clara Shippee, indicated to McCrillis that she desired him to accept Imhoff as a tenant and agreed that

if the premises were rented to him at $35 per month she would pay $30 each month to make up the difference, but that this agreement was not to be disclosed to Imhoff; that this arrangement was agreed to and that Imhoff became a tenant under these circumstances.

It appears from the testimony that Clara Shippee was friendly toward Imhoff and evidenced concern and interest in his welfare. She later married Imhoff but died prior to the filing of the complaint in this action.

If the testimony of the defendants is true the foregoing facts would establish the rent at $65 per month on the freeze date, March 1, 1942, on which date Imhoff was still the tenant. Defendant Edgar McCrillis further testified that the rent prior to the letting to Imhoff was $65 per month. There is in evidence defendants' receipt books made in the regular course of business which contain stubs recording various rent and mortgage transactions by the defendants. The stub for Imhoff's rent as of March 1, 1942 indicates the rent to be $65. Stubs for prior and subsequent months contain similar entries. Some, however, state the rent to be $35 per month. The defendants' explanation of this variation is that, because of the secret agreement with Clara Shippee, the defendants' monthly rent receipts when given to Imhoff personally were for $35, but when the total rent of $65 was received by the defendants from Clara Shippee, as it sometimes was, receipts were issued for the latter amount.

The only testimony directly contradicting the defendants is that of Imhoff who testified that no such arrangement was ever entered into with Clara Shippee. This testimony is of doubtful value because the alleged arrangement could have been made without his knowledge; in fact it was intended that he should not know of it. In contradiction of defendants' testimony and as affecting its credibility, plaintiff points to the defendants' course of conduct subsequent to the original renting to Imhoff in 1941 and contends that such conduct is so inconsistent with what defendants now claim to be the facts that their sworn testimony does not warrant belief.

The plaintiff calls attention to the fact that in 1943 the defendants filed in the Office of Price Administration a registration in which, among other things, they stated the maximum rent to be $35 per month. The plaintiff contends that this document reflects the true rent because otherwise the defendants would be guilty of making a false return. But the defendants are not bound by this registration, even if false. Maximum legal rent must be determined by ascertaining what was actually being charged on the freeze date. As stated in Kalwar v. McKinnon, 1 Cir., 152 F.2d 263, at pages 264, 265:

"It is clear, we think that the figure put down by the landlord as the rent he was receiving on the freeze date does not become, even tentatively, the legal maximum rent. If the landlord makes a false statement in the registration statement, or if he neglects to file a registration statement, he may be subject to criminal penalties under § 205 (b) of the Act; * * * in any litigation where the point becomes relevant the rent which was actually being charged on the freeze date must be factually determined. * * * If he (the landlord) specifies it incorrectly, he does not thereby establish the maximum legal rent at the asserted figure."

Apparently the plaintiff here attaches more importance to this registration than to the sworn testimony of the defendants in this Court. In this connection it seems proper to note that in the early days of rent control there was much confusion, misunderstanding, and misinformation relative to the regulations and their administration. It is not improbable that the defendants in stating the rent to be $35 per month had in mind merely the rent or that part of the rent being paid by the tenant Imhoff. Because of an omission in respect to services in the original registration, an amended registration was filed. Here again the landlord stated the rent to be $35 per month. This is no more binding on the defendants than the original registration, and is of little additional value on the question of the defendants' credibility.

Nicholas Fleming succeeded Imhoff as a tenant and in compliance with the regulations a notice of change of tenancy was filed by the defendants, again stating the maximum rent to be $35 and naming Imhoff as the prior tenant. This document also is not conclusive on the defendants. Furthermore the statements contained therein may be reasonably explained as reflecting an intention to continue to observe the secret agreement made with Clara Shippee. Imhoff at this time had ceased to be a tenant, but a disclosure at this point to the Rent Director of what the defendants contend are the true facts might have resulted in a complete investigation by the Rent Director, and Charles Imhoff undoubtedly would have learned of the situation perhaps to the embarrassment of all concerned. Furthermore it is admitted that Fleming rented the premises for $35 per month and in addition agreed to make certain repairs. The repairs, therefore, became a part of the rent. The value of these repairs does not appear so that I cannot say that Fleming's rent was not fairly comparable to what defendants allege to have been the maximum rent on the freeze date.

■ Earl Appleby subsequently became a tenant at a rental of $50 per month, and Oscar Bolin succeeded him at $65 per month. It is in respect to these tenants that the defendants have been charged with receiving rent in excess of the maximum. No notice of change of tenancy was filed for these tenants as none was then required. Appleby's rental agreement is of little importance in determining the maximum rent. A landlord does not violate the statute by charging less than the maximum rent. The fact that the defendants rented the premises to him for less than what they claim they could have charged is not discrediting to them.

I have observed Edgar McCrillis and his wife, the defendants, and also their daughter on the witness stand and have weighed their testimony. I believe that they testified truthfully.

■ Having considered all the evidence presented to me on this issue, I find that the maximum rent for the premises involved on March 1, 1942 was $65 per month, and that therefore there were no overcharges as alleged in the complaint.

The plaintiff contends that the defendants are barred from asserting the defense heretofore discussed because of their failure to exhaust the administrative remedies provided by the Housing and Rent Act of 1947, as amended, for the determination of maximum rent.

■■ In the absence of statutory limitation in respect to remedies the doctrine of exhaustion of administrative remedies "is a product of judicial self-limitation". United States v. Fritz Properties, D. C., 89 F. Supp. 772, 777. The application of this doctrine in a proper case lies within the judicial discretion of the Court. U. S. v. Abilene & S. Ry. Co., 265 U.S. 274, 44 S. Ct. 565, 68 L.Ed. 1016. There are many situations requiring the exhaustion of administrative remedies before the issues involved can be judicially determined. However, I do not believe the instant case requires or warrants the application of this doctrine.

It appears that the tenant Bolin, on or about June 1949, complained to the Rent Director that the rent charged him was in excess of the rent of March 1, 1942, as set forth in the defendants' original registration filed in 1943. When this complaint was called to the attention of the landlords they filed in July of 1949, what has been designated as a "corrected registration" setting forth that the maximum legal rent was $65 per month. After a lapse of seven months the Rent Director, on February 24, 1950, on his own initiative issued an order, without notice and without hearing, fixing the maximum rent at $35 per month, retroactive to July 1, 1947. Apparently it is the contention of the defendants that this order is invalid because of the failure to afford the defendants an opportunity to be heard prior to its issuance. (See regulation 24 C.F.R. § 840.109). Evidently the Rent Director also was in doubt as to its validity because he reopened the matter and on June 9, 1950 a full oral hearing was held by him. The Director then entered an order on June 15, 1950 determining "that the order issued February 24, 1950 con-

tinues in effect without change." This was an order from which an appeal would lie. The plaintiff contends that the defendants should have appealed from this order and not having done so are bound by it. But on the date of this order the defendants were already in this Court and two courses of procedure were open to them; they could appeal to the Housing Expediter in Washington, or they could take their stand in this Court, not as seekers of affirmative relief but as defendants answering and defending themselves against the allegations of the complaint. Clinkenbeard v. United States, 21 Wall. 65, 88 U.S. 65, 22 L.Ed. 477; Woods v. Laabs, D.C., 92 F. Supp. 220; United States v. Fritz Properties, supra. They elected to rely on a judicial determination of the matter here.

In view of all the circumstances I find that the defendants had the right to be heard in this Court on all the issues raised by the pleadings in this action, and to present the defense now before me.

Judgment may be entered for the defendants.